1

2

3

4                               UNITED STATES DISTRICT COURT

5                              NORTHERN DISTRICT OF CALIFORNIA

6

7      NELSON CARLOS DELGADO,                        Case No. 17-cv-06614-HSG

8                         Petitioner,               **ORDER DENYING PETITION FOR**
                                                     **WRIT OF HABEAS CORPUS;**
9               v.                                   **DENYING CERTIFICATE OF**
                                                     **APPEALABILITY**
10     CRAIG KOENIG,

11                        Respondent.

12

13          Petitioner, a state prisoner incarcerated at California Training Facility – Soledad,[1] has filed

14     this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the

15     validity of a conviction obtained against him in state court.  Dkt. Nos. 1 and 5.  Respondent has

16     filed an answer.  Dkt. Nos. 12–14.   Petitioner has filed a traverse and a supplemental traverse.

17     Dkt. Nos. 21, 37.  The Court has carefully considered the briefs submitted by the parties.  For the

18     reasons set forth below, the petition is DENIED.

19                                   **I.  PROCEDURAL HISTORY**

20          On July 18, 2013, a San Francisco jury convicted Petitioner of oral copulation of a child

21     ten years or younger by a defendant eighteen years of age or older (Cal. Penal Code § 288.7(b))

22     (count 1); forcible oral copulation of a person under fourteen years of age by a defendant seven or

23     more years older (Cal. Penal Code § 269(a)(4)) (count 2); forcible lewd act on a child under

24     fourteen years of age (Cal. Penal Code § 288(b)(1)) (count 3); and possession of a controlled

25

26     _____
       [1] Petitioner initially named Shawn Hatton as the respondent in this action.  In accordance with
27     Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Habeas
       Corpus Cases Under Section 2254, the Clerk of the Court is directed to substitute Craig Koenig,
28     the current warden of Correctional Training Facility – Soledad, in place of the previously named
       respondent because Warden Koenig is Petitioner's current custodian.

United States District Court
Northern District of California

1   substance (Cal. Health & Saf. Code § 11377(a)) (count 4).  Answer, Ex. A[2] ("CT") 335–338 and

2   Ex. D ("RT") 550-53, 603-05.  On April 11, 2014, Petitioner was sentenced to a term of fifteen

3   years to life.  CT 452.

4           On appeal, Petitioner argued that the trial court prejudicially abused its discretion and

5   violated his constitutional rights by excluding evidence he sought to introduce to impeach the

6   primary witness, Maria K.  Answer, Ex. F.  On September 2, 2016, the California Court of Appeal

7   affirmed the conviction in an unpublished decision.  *People v. Delgado*, C No. A141714, 2016

8   WL 4655752 (Cal. Ct. App. Sept. 2, 2016).  On November 22, 2016, the California Supreme

9   Court summarily denied the petition for review.  Ans., Ex. K.

10          On June 27, 2017, Petitioner filed a petition for a writ of habeas corpus in the California

11  Supreme Court, which raised the following claims: (1) the trial court improperly refused to

12  remove a juror for cause when it allowed a former prosecutor to be seated; (2) the jury disregarded

13  the trial court's admonishment to disregard evidence unfavorable to Petitioner; and (3) defense

14  counsel was ineffective because she failed to conduct a reasonable pre-trial investigation,

15  specifically when she failed to subpoena the one-year mental health records from Maria K.'s

16  treating physicians and when she failed to call these physicians as witnesses.  Answer, Ex. L.

17  With respect to the first claim, Petitioner cited to *Strickland v. Washington*, 466 U.S. 668 (1984),

18  and alleged that he told defense counsel that the former prosecutor could not be fair and impartial

19  and asked that she be removed but defense counsel did not have the juror removed for cause, and

20  that he asked appellate counsel to raise this issue but appellate counsel refused.  *Id.*  On August 30,

21  2017, the California Supreme Court summarily denied the habeas corpus petition.  Ans., Ex. M.

22          On November 16, 2017, Petitioner filed a petition for a writ of habeas corpus in this Court.

23  Dkt. No 1.  On December 27, 2017, Petitioner filed an amended petition.  Dkt. No. 5.  On January

24  8, 2018, the Court found that the amended petition stated the following cognizable claims:

25  (1) Petitioner's due process rights were violated when the trial court failed to excuse for cause a

26  juror who formerly had worked as a prosecutor and Petitioner's Sixth Amendment right to the

27

28  ───────────────────
    [2] The exhibits to the Answer are docketed at Dkt. Nos. 13–14.

United States District Court
Northern District of California

effective assistance of counsel was violated when counsel failed to request the removal of this juror; (2) Petitioner's Sixth Amendment right to trial by jury was violated because there was juror misconduct in that at least one juror considered extrinsic evidence; and (3) Petitioner received ineffective assistance of counsel when trial counsel failed to do a reasonable pretrial investigation regarding Maria K.'s mental health issues. Dkt. No. 6. The Court ordered Respondent to show cause why the writ should not be granted. Dkt. No. 6. On April 30, 2018, Respondent filed an answer to the order to show cause. On August 13, 2018, Petitioner filed a traverse. Dkt. Nos. 12-14, 21. On March 6, 2019, the Court ordered Respondent to file in the record, and serve upon Petitioner, the portions of the trial court proceedings relevant to a determination of the Fourteenth Amendment claim that the trial court failed to excuse a juror for cause because she had formerly worked as a prosecutor, specifically the portion of the voir dire proceedings relevant to this juror and the juror questionnaire for this juror. Dkt. No. 22. The Court granted Petitioner leave to file a supplemental traverse addressing this supplemental filing. Dkt. No. 22. On July 8, 2019, Respondent lodged under seal copies of the reporter's transcript of the juror voir dire. Dkt. No. 28. On July 31, 2019, Respondent filed and served upon Petitioner a redacted version of the juror voir dire transcripts that were relevant to the due process claim. Dkt. No. 31. On August 13, 2019, counsel for Respondent informed the Court that she was unable to comply with the order to file the juror questionnaire for the relevant juror because the juror questionnaires from this case were missing. Dkt. No. 33. On November 29, 2019, Petitioner filed a supplemental traverse. Dkt. No. 37.

## II. BACKGROUND

The following factual and procedural background is taken from the September 7, 2016 opinion of the California Court of Appeal:[3]

### Events at Victoria Park

---

[3] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004), unless otherwise indicated in this order.

United States District Court
Northern District of California

In May 2012, an eight-year-old girl with Down's Syndrome, Jane Doe, went to Victoria Park in San Francisco with her mother and siblings. At some point, Doe went off to use the bathroom and Doe's mother lost sight of her for a few minutes.

Maria K. and her then-boyfriend Joseph A. were also at Victoria Park. They were homeless at the time and park regulars. Maria, like Doe, went to use the park's bathroom. She entered the men's bathroom because the women's one was occupied. Once inside, Maria saw defendant in a stall facing the toilet. She also saw a little girl, facing defendant, with her back toward the toilet. Defendant was holding the young girl by the head or hair and his penis was in her mouth. The little girl was gagging. Maria was later able to identify the girl as Doe.

Maria left the bathroom, called Joseph for help, and told him what she had seen. Then, as Joseph tells it, Joseph confronted defendant and asked what he was doing. Defendant said he was cleaning the bathrooms. Joseph then saw a little girl running away. Defendant fled the park as a posse Joseph had roused attacked and pursued him.

A man ran up to Doe's mother and told her about the molestation. The mother found Doe in the playground. She asked Doe if she had been touched. Doe did not answer, but her eyes filled up with tears. Doe seemed scared, and her mother observed an unusual red rash around Doe's lips.

The next day, Joseph and Maria were again at the park and saw defendant. Joseph summoned police, who came and arrested defendant.

Doe later spoke with forensic interviewer Gloria Samayoa. Doe did not answer most of the questions. At trial, Samayoa offered no opinion about whether Doe's responses were consistent or inconsistent with being a molest victim.

An information charged defendant with oral copulation of a child 10 years old or younger by an adult (Pen. Code, § 288.7, subd. (b); count 1), [FN 1] aggravated sexual assault of a person under 14 by one more than seven years older (§ 269, subd. (a)(4); count 2), forcible lewd act upon a child under 14 (§ 288, subd. (b)(1); count 3), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 4), and possession of drug paraphernalia (former Health & Saf. Code, § 11364.1, subd. (a); count 5). Defendant pleaded guilty to count 5. The other counts proceeded to a jury trial.

> FN 1: All further statutory references are to the Penal Code unless otherwise indicated.

**Impeachment of Maria K.**
Maria was the only eyewitness to the molestation. Maria, however, had mental health troubles and had been sexually abused herself as a child. Her believability became a central issue before and during trial.

Defendant subpoenaed Maria's mental health records. A report from July 19, 2011, states Maria suffered from depression, anger, and mood swings. It relates Maria's assertion that she "'hear[d] voices and s[aw] a black shadow following me'" and that she did not "'want to go around people.'" It says Maria had reported some auditory and visual hallucinations for years, or "since she was little," but was not then able to afford treatment. The report concluded Maria was suffering from schizophrenia, schizoaffective disorder and bipolar affective disorder.

A report from August 2, 2011, states Maria felt her new medicine was working and that the auditory hallucinations had abated and the shadows had disappeared. According to the report, Maria said she was feeling calmer and was able to sleep. The report says Maria was then not feeling depressed, angry or anxious and that her thinking was clear with no

delusions, distortions or paranoia.

A report dated September 22, 2011, describes a brief relapse when Maria stopped taking her medication for three days. Off the medication, her acute symptoms started again but they abated upon resuming her medication. According to the report, she was then thinking clearly with no distortions, delusions or paranoia. She was not depressed or euphoric, and was appropriate to situation, content, calm, pleasant, and cooperative.

Finally, a March 13, 2012 report relates another relapse coinciding with Maria stopping one of her medications. Her thinking was characterized as "paranoid, delusional, hallucinating." She was instructed to restart the medication she had stopped.

In addition to these mental health reports, defendant obtained documents showing Maria was arrested for prostitution and suffered a conviction in 1992 for lewd conduct.

Defendant retained forensic psychologist Dr. Larry Wornian to review all these records.

Before trial began, on June 25, 2013, the prosecution filed a motion in limine to exclude evidence regarding Maria's mental health and sexual history as irrelevant and harassing. In particular, the prosecution sought to exclude: (1) Dr. Wornian's likely testimony concerning Maria's proclivities based on her mental health records or criminal history, (2) any evidence of mental health troubles or criminality not within the weeks or months surrounding Maria witnessing the crime, (3) Maria's involuntary confinement in a psychiatric institution in October 2012 after she broke up with her then-boyfriend upon discovering he was transgender, (4) any expert testimony regarding Maria's credibility generally and (5) Maria's prior misdemeanors and arrests.

Ruling on the motion, the trial court limited testimony about Maria's mental health to allow only information regarding her ability to perceive, recollect, and explain what she saw. The court refused to allow evidence of hallucinations dating from more than six months before or after the alleged crime, specifically before September 2011 or after October 12, 2012.

Giving more specific guidance, the trial court excluded evidence of Maria's psychiatric hospitalization related to her breakup with her transgender boyfriend. It further precluded inquiry into the sexual orientation or gender of Maria or the former boyfriend. Further, the trial court excluded evidence concerning Maria's 1992 arrest for prostitution and conviction for lewd conduct, as well as all other prior misdemeanors and arrests. It also excluded evidence that Maria previously worked as a stripper.

The trial court held an Evidence Code section 402 hearing concerning Dr. Wornian's testimony. At the hearing, Dr. Wornian said that the "things that [Maria] sees ... are inherently colored by her history." He believes "her perception of what's going on right now ... draws inherently on her memories of what had happened to her in the past." Dr. Wornian questioned Maria's credibility given her medical records, her being molested and raped as a child, her past sexual related arrest and convictions, her past job as a stripper, her hallucinations and her psychiatric hospitalization related to her breakup with her transgender boyfriend. He believed that her sexual background, combined with her mental health issues, "have served to shape her understanding of the world so that she sees things perhaps in an overly sexualized fashion." He asserted having "significant concerns ... in terms of her reliability as a historian, whether she is given inherently to misconstruing what is going on in the world around her, how good a reader of what happens in her world, what happens in herself...."

At the Evidence Code section 402 hearing, as the parties and the trial court discussed the impact of Dr. Wornian's testimony, defense counsel argued Maria had been prone to visual hallucinations, stating in September 2010, Maria reported "men were following her, men in

5

black, shadows were following her and things of that nature." However, counsel appeared to be referring to the July 2011 report already discussed, as there is no 2010 report in the record. The court believed such evidence was irrelevant and said the documented hallucinations "relate to her. There's not one record that I've been pointed to where she has reported something occurring to other people. It's all about her. And in this particular case, it's nothing about her."

As the Evidence Code section 402 hearing ended, the trial court maintained its prior limitations, but decided to allow evidence showing Maria had been the victim of child molestation herself, saying that "our past experiences always color how we perceive things, I think the fact that Ms. Maria was a victim of child molestation is relevant, but I think the arrest, the police report, the—all that stuff is not relevant."

Largely within the parameters set by the trial court, Maria was questioned about her mental health and Dr. Wornian offered testimony on her ability to perceive.

Maria explained her mental health issues started in 2007 with depression, after she got laid off from her job as a nanny. As she conceded on cross-examination, Maria then began hearing voices, more precisely somebody calling her name. When asked if she had ever heard a voice telling her that she was seeing a child molest, a rape or any sort of sexual things, she answered no.

Maria testified she tried different medications to control her mental problems. She also testified that on May 12 and 13, 2012—the days surrounding the assault on Doe—she was on medication and it was then effective at preventing hallucinations.

Although Maria testified she has heard voices, on cross-examination she denied "suffer[ing] from seeing things that aren't there." Responding to defense counsel's follow up questions, she answered she did not remember whether she had ever told doctors that she had seen shadows following her or men in black following her. Maria also denied hearing voices telling her to kill herself or that she stopped taking medication because she was getting too many bad messages from her television.

Dr. Wornian testified about the nature of Maria's mental health conditions, the symptoms she suffered, and the medicine she used. Dr. Wornian based his testimony on Maria's medical reports he was able to review. Because of the limitations imposed by the court, Dr. Wornian could only talk about reports dating from September 2011 to October 12, 2012. Therefore, he did not talk about the July or August 2011 reports. He said, on direct examination, that the September 22, 2011 report indicated "the symptoms that [Maria] had originally presented with were getting worse." Wornian later admitted this report states Maria was then, when medicated, thinking clearly, with no distortions, no delusions, no paranoia, not feeling depressed, appropriate to situation, content, calm, pleasant and cooperative.

Dr. Wornian explained to the jury and the court that some symptoms related to schizophrenia may be auditory and visual hallucinations or delusions. He then talked about Maria's March 13, 2012, psychiatric report. The report indicated she was having paranoid and delusional thoughts and hallucinations. Dr. Wornian thought both auditory or visual hallucinations were possible, even though the report did not specify which sort Maria was having.

Next, Dr. Wornian referenced other mental health records from a different care provider. He described a December 2011 report showing Maria being generally maintained by her medications but still experiencing some auditory hallucinations and paranoid thoughts. He also described an August 2012 report showing Maria again stopped taking medications and experienced auditory hallucinations.

Dr. Wornian admitted Maria appears to be motivated to seek treatment. He agreed with the prosecution's assertion that "from the records, you see that when [Maria]'s having troubles she goes to the doctor" and that "there are no records of her going to the doctor in April, May or June" 2012. Dr. Wornian said "she seemed to have been doing reasonably well during that period of time."

Dr. Wornian also testified Maria was sexually abused several times as a child by different family members and opined this might affect her perceptions. He explained how victims of such sexual abuses do not "see[ ] the world the same way"; they see through glasses that distort the world into an "inappropriately sexualized" and "threatening place." These victims can see "things that aren't quite there." Dr. Wornian said that "the accuracy of her being able to see what's in front of her eyes, ... when you start adding the issues around the delusions, the hallucinations, ... you begin to realize ... and particularly in terms of sexual issues ... she may believe what she's actually seeing but in terms of what you and I would see, it's like, huh, how did you come up with that? I just don't see it." Dr. Wornian was concerned evidence Maria had possibly witnessed other sexual activity at the park—sex occurring in bathrooms, a threat of rape, and concern (after the incident with Doe) for the possibility that another man might be molesting children—reflected a sexual preoccupation. However, when questioned by the prosecution, Dr. Wornian admitted there were no medical records showing her claiming sexual trauma or abuse or over-sexualizing her interactions.

A jury found defendant guilty of counts 1–4. He was sentenced to 15 years to life and timely appealed.

*Delgado*, 2016 WL 4655752, at *1–*4.

## III. DISCUSSION

### A.   Standard of Review

A petition for a writ of habeas corpus is governed by AEDPA. This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the

jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). Petitioner raised the claims in the instant petition for the first time in his state habeas petition, which the California Supreme Court summarily denied on August 30, 2017. Answer, Exs. L and M. Section 2254(d) applies even where, as here, the state court summarily denied the state habeas petition without a reasoned opinion. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011); *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "In these circumstances, [a petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the California Supreme Court's decision." *Cullen*, 563 U.S. at 187–88 (quoting *Harrington*, 562 U.S. at 98). In other words, where a state court issues a

8

summary denial, "a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington*, 562 U.S. at 102.  Even if a reviewing court would grant federal habeas relief upon de novo review, Section 2254(d) precludes such relief if there are "arguments that would otherwise justify the state court's result." *Id.*

**B.      Petitioner's Claims**

**1.      New Claims Raised in Traverse**

The amended petition, liberally construed, states the following cognizable claims for federal habeas relief:  (1) Petitioner's due process rights were violated when the trial court failed to excuse for cause a juror who formerly had worked as a prosecutor and petitioner's Sixth Amendment right to the effective assistance of counsel was violated when counsel failed to request the removal of this juror; (2) Petitioner's Sixth Amendment right to trial by jury was violated because there was juror misconduct in that at least one juror considered extrinsic evidence; and (3) Petitioner received ineffective assistance of counsel when trial counsel failed to do a reasonable pretrial investigation regarding Maria K.'s mental health issues.  Dkt. No. 6.

In his traverse, Petitioner raises numerous new challenges to his conviction: (1) juror Cabaroegas was unqualified to serve as a juror because he was unable to understand English and therefore did not understand the evidence presented at trial or the jury deliberations; (2) the trial court denied him his right to present a complete defense and his rights under the Confrontation Clause when it admitted the videotaped interview of the victim as evidence but did not require the victim to testify in person; (3) trial counsel was ineffective for failing to object to the admission of the videotaped interview of the victim and to the admission of the toys allegedly used to lure the victim; and for failing to object to the testimony by the victim's mother regarding a rash on the victim; (4) the prosecution should have disclosed the testimony regarding the rash prior to trial; (5) the testimony regarding the rash constituted extrinsic evidence, and the jury's exposure to this testimony requires that Petitioner be granted a new trial; (6) the trial court denied him his rights under the Due Process Clause and the Confrontation Clause when it allowed the victim's mother

9

to testify regarding the rash because the testimony was inconsistent with her prior testimony and was not first disclosed to the defense; (7) trial counsel was ineffective because she failed to ensure the admission of evidence relevant to Maria K.'s credibility, specifically her criminal sexual background and arrests, as well as her other mental health issues, and because she agreed to abide by the court's order excluding this evidence; (8) Petitioner's rights under the Confrontation Clause were denied when the trial court excluded evidence of Maria K.'s criminal sexual background and arrests and limited evidence of her mental health issues to a one-year period; and (9) trial counsel was ineffective for failing to further investigate issues between the victim and her mother that were investigated by Child Protective Services because it would have cast doubt on the mother's credibility.  Dkt. No. 21-1 at 1-26.

None of these arguments were raised in the amended petition.  *See generally* Dkt. No. 5. And, outside of the Confrontation Clause claim regarding the exclusion of Maria K.'s sexual history and mental health history beyond the one-year period, none of these claims were presented to the California Supreme Court.  *See* Answer, Exs. J and L.

"A traverse is not the proper pleading to raise additional grounds."  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).  Nevertheless, a district court "has discretion, but is not required to" consider evidence and claims raised for the first time after the filing of the petition.  *See Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).  This includes new claims raised by a petitioner in the traverse.  *See, e.g., Jackson v. Roe*, 425 F.3d 654, 655 n.1 (9th Cir. 2005) (noting magistrate judge's consideration of a new claim raised for first time in traverse).  The Court will exercise its discretion and address the exhausted Confrontation Clause claim regarding the exclusion of Maria K.'s sexual history and mental health history beyond the one-year period on the merits, and denies this claim.  However, the Court declines to address the remaining new arguments raised in the traverse because, as explained below, these claims are unexhausted.  Pursuant to 28 U.S.C. § 2254(b), habeas relief may not be granted unless a petitioner has exhausted his state remedies, which requires that the petitioner's contentions be fairly presented to the state courts and disposed of on the merits by the highest state court.  *See James v. Borg*, 24 F.3d 20, 24 (1994).

United States District Court
Northern District of California

1

United States District Court
Northern District of California

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       **a.**       **Confrontation Clause claim**

      The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment.  *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.  *Crawford v. Washington*, 541 U.S. 36, 61 (2004).  It commands not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.  *Id.*; *see Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (noting a primary interest secured by the Confrontation Clause is the right of cross-examination).  The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.  *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam); *see, e.g., Coleman v. Calderon*, 150 F.3d 1105, 1112 (9th Cir. 1998) (Confrontation Clause does not require that prosecutor disclose evidence that will help defense effectively cross-examine a prosecution witness), *rev'd and remanded on other grounds*, 525 U.S. 141, 147 (1998).  Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examinations based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  The Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes."  *Nevada v. Jackson*, 569 U.S. 505, 511 (2013) (criticizing court of appeals for "elid[ing] the distinction between cross-examination and extrinsic evidence by characterizing the cases as recognizing a broad right to present 'evidence bearing on [a witness'] credibility" and noting that no Supreme Court decision has clearly established that Constitution is violated when trial court excludes extrinsic evidence of specific instances of a witness's conduct to impeach crediblity).

      Petitioner argues that his rights under the Confrontation Clause were denied when the trial court excluded evidence of Maria K.'s criminal sexual background and arrests and limited

evidence of her mental health issues to a one-year period surrounding the relevant event.  The California Supreme Court summarily denied this claim.  The state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The trial court allowed the evidence that Maria K. had been molested as a child because this experience could influence how she viewed the May 2012 encounter with Petitioner.  But the trial court found that the remaining evidence – Maria K.'s criminal sexual background, her arrests, and mental health history – was not directly relevant to her perception or credibility with respect to this particular incident.  RT 291.  Petitioner has not cited any case, and the Court is aware of none, where the Supreme Court has held that the exclusion of evidence bearing on credibility, regardless of its nature, violates a defendant's rights under the Confrontation Clause.  Rather, the Supreme Court has specifically rejected the argument that its Confrontation Clause precedent recognizes a broad right to present evidence bearing on a witness' credibility.  *Nevada*, 569 U.S. at 512.  Petitioner was able to challenge the credibility of Maria K.'s testimony by introducing evidence that she had been molested as a child, and by arguing that this experience influenced her perception of the relevant events.  RT 334-38, 341-45.  Petitioner was also able to cross-examine Maria K. at length to attack her credibility.  RT 97-108.  Petitioner has not demonstrated that his cross-examination was ineffective because he was unable to introduce all the available evidence he claims was relevant to Maria K.'s credibility.  Habeas relief is denied on this claim.

### b.   Remaining Claims Raised in Traverse Are Unexhausted

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515–16 (1982).  To exhaust the factual basis for the claim, "the petitioner must only provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle

upon which [the petitioner] relies.'" *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008)

(alteration in original).  It is not sufficient to raise only the facts supporting the claim; rather, "the

constitutional claim . . . inherent in those facts" must be brought to the attention of the state court.

*See also Picard v. Connor*, 404 U.S. 270, 277, (1971).  A petitioner does not exhaust all possible

claims stemming from a common set of facts merely by raising one specific claim.  *See*

*Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013) (mere submission of relevant affidavit to

state court not sufficient to place that court on notice of all potential constitutional challenges

stemming from affidavit).  "[M]ere similarity of claims is insufficient to exhaust." *Duncan*, 513

U.S. at 366.  Constitutional claims are not fairly presented to the state courts and therefore are not

exhausted if, for example, the claims in the federal petition and those presented to the state courts

arose under different federal constitutional provisions (including different clauses in the same

constitutional amendment, e.g., the due process and equal protection clauses of the 14th

Amendment).  *See Brown v. Cuyler*, 669 F.2d 155, 159 (3d Cir. 1982); *see also Picard*, 404 U.S.

at 277 (petitioner had not exhausted claim that conviction violated Equal Protection Clause where,

although he had presented the facts underlying claim to state courts, he only alleged that

conviction violated state law and, by extension, Fifth Amendment's requirement of grand jury

indictment and Fourteenth Amendment because it applied Fifth Amendment to states).

        With the exception of the Confrontation Clause discussed above, none of these claims

were presented to the state courts.  *See* Answer, Exs. J and L.  And none of these claims are

encompassed by the claims raised in the amended petition.  The claim of juror misconduct raised

in the amended petition arises out of a separate set of facts (considering extrinsic evidence) than

the claim of juror misconduct raised in the traverse (inability to understand the evidence presented

and the jury deliberations).[4]   Petitioner's three Confrontation Clause claims raised in the traverse

---

[4] This claim does not appear to state a cognizable claim for federal habeas relief.  The Sixth
Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors.  U.S.
Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  It is unclear how lack of fluency
in the English language prevents a juror from being impartial.  Moreover, there is no clearly
established law holding that a juror's lack of fluency in the English language violates a
defendant's constitutional rights.  Also, this claim fails on the merits.  The Court has reviewed the
transcript of the new trial motion hearing and disagrees with petitioner's characterization of juror
Cabaroegas' English language proficiency.  Juror Cabaroegas' responses indicated that he

arise out of three separate set of facts and involve three different witnesses: admission of the videotaped interview of the victim, admission of the victim's mother's testimony regarding the rash, and exclusion of Maria K.'s criminal sexual background and her mental health history outside of the one-year period.  Petitioner's three ineffective assistance of counsel claims challenge different alleged errors by counsel than the ineffective assistance of counsel claim raised in both the amended petition and the original petition for review.  In this traverse, Petitioner challenges (1) counsel's failure to object to admission of the victim's videotaped interview, the toys allegedly used to lure the victim, and the victim's mother's testimony about the rash; (2) counsel's failure to ensure the admission of Maria K.'s criminal sexual history, arrest history, and her other mental health issues, and, relatedly, counsel's decision to abide by the trial court's order excluding this evidence; and (3) counsel's failure to cast doubt on the mother's credibility by further investigating the issues between the victim and her mother that resulted in Child Protective Services investigating the family.  In the amended petition and the original petition for review, Petitioner only alleged that counsel was ineffective for not obtaining Maria K.'s mental health records and calling her treating physicians as witnesses.  The new juror misconduct claim, Confrontation Clause claims, and ineffective assistance of counsel claims, raised for the first time in the traverse and described above, are unexhausted.  *Cf. Wood v. Ryan*, 693 F.3d 1104, 1117, 1120 (9th Cir. 2012) (general allegation that prosecutor engaged in pervasive misconduct not sufficient to alert state court to separate specific instances of purported misconduct and general allegation of ineffective assistance of counsel not sufficient to alert state court to separate specific instances of claimed ineffective assistance of counsel).  The remaining claims (prosecutorial misconduct / *Brady* violation, exposure of jury to extrinsic evidence, and denial of due process due to the admission of the victim's mother's testimony regarding the rash where testimony was inconsistent with prior testimony) are also unexhausted, having never been presented to the California Supreme Court.  The Court may not consider these new claims.  *See* 28 U.S.C. § 2254(b).

---

understood the questions.

### 2.       Due Process Claim

Petitioner argues that his due process rights were violated when the trial court failed to excuse for cause Juror No. 8, a juror who had formerly worked as a prosecutor.  Am. Pet. at 4–5. Respondent argues that this claim fails to assert facts warranting relief because there is no evidence that this juror was not fair and impartial.  In the alternative, Respondent argues that this claim fails on the merits.  ECF No. 12-1 at 10–14.  In his traverse, Petitioner argues that he has presented sufficient facts in support of his claim: the prosecution removed a potential juror for cause because he was a defense attorney; and the California Supreme Court's rejection of this claim was unreasonable because it refused to review the appellate court decision and refused to consider the state habeas petition.  ECF No. 21-1 at 2–6.  In his supplemental traverse, Petitioner argues that there is a colorable claim of juror bias because the juror had served as a prosecutor for four years and acknowledged still being on good terms with her former fellow prosecutors. Petitioner argues that this colorable claim of juror bias required the trial court to excuse her or, at the very least, inquire further into the potential bias.  Dkt. No. 37.

The California Supreme Court summarily denied this claim. Answer, Ex. M.  After carefully reviewing the record and the relevant caselaw, the Court finds that the state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and that the denial was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### a.       Legal Standard

It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant the right to an impartial jury.  *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976).  An impartial jury is "a jury capable and willing to decide the case solely on the evidence before it."  *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).  A defendant is denied the right to an impartial jury even if only one juror is biased or prejudiced.  *Tinsley v. Borg*, 895 F.2d 520, 523–24 (9th Cir. 1990).  A prospective juror must be removed for cause if his views or beliefs would prevent or substantially impair the performance of

1    his duties as a juror in accordance with his instructions and his oath.  *See Wainwright v. Witt*, 469

2    U.S. 412, 424 (1985).

3         On AEDPA review, deference is owed by a reviewing court to a trial court's ruling

4    whether to strike a particular juror regardless of whether the trial court engaged in an explicit

5    analysis regarding substantial impairment, and even if the juror did not make a clear statement that

6    he or she was impaired.  *White v. Wheeler*, 577 U.S. 73, 77 (2015) (per curiam).  A "trial court's

7    contemporaneous assessment of a juror's demeanor, and its bearing on how to interpret or

8    understand the juror's responses, are entitled to substantial deference."  *Id.* at 462.  The state

9    court's determination of juror partiality is entitled to a presumption of correctness on federal

10   habeas review.  *See Wainwright v. Witt*, 469 U.S. 412, 426-28 (1985).  Federal habeas relief may

11   be granted for a state trial court's failure to strike a juror for cause only if a petitioner has shown

12   that the state court's ruling on the claim "was so lacking in justification that there was an error

13   well understood and comprehended in existing law beyond any possibility for fairminded

14   disagreement."  *White*, 577 U.S. at 77 (internal quotation marks and citation omitted).

15        To disqualify a juror for cause requires a showing of either actual or implied bias, "'that is

16   . . . bias in fact or bias conclusively presumed as a matter of law.'"  *United States v. Gonzalez*, 214

17   F.3d 1109, 1111-12 (9th Cir. 2000) ("*Gonzalez I*") (quoting 47 Am. Jur. 2d Jury § 266 (1995)).

18   Actual bias is bias in fact, the existence of a state of mind that leads to an inference that the person

19   will not act with complete impartiality.  *See Gonzalez I*, 214 F.3d at 1112.  Courts have found

20   actual bias where a potential juror stated that, based upon his personal experience, he could not be

21   impartial when evaluating a drug dealer's testimony; where a juror in a case involving

22   embezzlement from a labor union emphasized his negative experiences with unions and responded

23   equivocally when asked if he could render a fair and impartial verdict despite those views; and

24   where a juror in a drug distribution case admitted to a conviction for marijuana possession but

25   stated that he believed it to be the product of entrapment.  *See id.* (citing cases).  But there was no

26   actual bias where a juror initially expressed reservations about being impartial on an emotional

27   level but, after a dialogue with the trial judge, stated that she could evaluate all the evidence

28   impartially.  *See United States v. Gonzalez*, 906 F.3d 784, 797 (9th Cir. 2018) ("*Gonzalez II*").

United States District Court
Northern District of California

16

1          In extraordinary cases, courts may presume bias based upon the circumstances.  Unlike the

2   inquiry for actual bias, in which the court examines the juror's answers on voir dire for evidence

3   that he was in fact partial, the issue in assessing implied bias is whether an average person in the

4   position of the juror in controversy would be prejudiced.  *See Gonzalez I*, 214 F.3d at 1112.

5   Prejudice is to be presumed where the relationship between a prospective juror and some aspect of

6   the litigation is such that it is highly unlikely that the average person could remain impartial in his

7   deliberations under the circumstances.  *See id.*; *Tinsley*, 895 F.2d at 527.  Applying this standard,

8   courts have found implied bias in cases where the juror in question had some personal experience

9   that was similar or identical to the fact pattern at issue or where the juror was aware of highly

10  prejudicial information about the defendant.  *See Gonzalez I*, 214 F.3d at 1112-13 & n.4

11  (cataloguing cases in which implied bias was found); *Tinsley*, 895 F.2d at 527-29 (same).

12                  **b.        Analysis**

13         Keeping in mind the "special deference" to be accorded a state court's credibility findings,

14  *see Yount v. Patton*, 467 U.S. 1025, 1038 & n.14 (1983), as well as the "'high measure of

15  deference'" to be accorded its findings on juror impartiality, *Rushen v. Spain*, 464 U.S. 114, 120

16  (1983) (quoting *Summer v. Mata*, 455 U.S. 591, 598 (1982)), the Court finds that the trial court's

17  determination that there was no indication of either actual or implied bias is fairly supported by the

18  record, and that the California Supreme Court's denial of this claim was therefore neither based on

19  an unreasonable determination of the facts in light of the evidence presented in the state court

20  proceeding, nor an unreasonable application of, or contrary to, Supreme Court precedent.

21         The gravamen of petitioner's argument is that, as a matter of law, a former prosecutor is

22  biased against criminal defendants.  This argument is not supported by either clearly established

23  Supreme Court law or by the record.

24         There is no clearly established federal law holding that a juror who previously worked as a

25  criminal prosecutor is, as a matter of law, actually biased or that, as a matter of law, bias must be

26  assumed for all former criminal prosecutors.  Nor is there any clearly established federal law

27  holding that a former criminal prosecutor who remains on good terms with her former fellow

28  prosecutors is, as a matter of law, actually biased or must be presumed to be biased.  Rather,

17

federal law holds that determining whether a potential juror is biased is a fact-specific and context-specific inquiry. *See Gonzalez I*, 214 F.3d at 1112 (citing cases where actual or implied bias was found based on potential juror's personal experiences and either her statements during voir dire or her knowledge of highly prejudicial information about defendant).

In addition, the state court's conclusion that Juror No. 8 was not biased was not an unreasonable determination of the facts in light of the evidence presented.

| | |
|---|---|
| Court: | Okay.  Go ahead.  We have [Juror No. 8]. |
| Juror No. 8: | Yes.  My name is (name redacted).  I live in Lower Pac Heights.  I am single but live with my boyfriend.  I am an attorney and I currently work as a legal recruiter.  My boyfriend is a technical artist for Sony.  I do not have any adult children, and I have never been selected to be on a jury.  My previous attorney experience is I was a criminal prosecutor for four years in Maricopa County. |
| Court: | Beautiful Maricopa County.  Why would you leave Maricopa County?  Just curious. |
| Juror No. 8: | It's a little hot for me. |
| Court: | Really? I did a wedding in Healdsburg this weekend, outdoor wedding. |

Dkt. No. 31 at 5.

| | |
|---|---|
| Court: | . . . . Okay. All right. So anybody a member of organizations which advocates positions regarding the criminal justice system such as MADD, Mothers Against Drunk Driving, the ACLU, the NRA, any kind of victim witness --  Yes, [Prospective Juror No. 9]. |
| Prospective Juror 9: | I'm not sure if this counts but the Southern Poverty lawsuit [sic]. |
| Court: | Okay. Anybody -- yes, [Prospective Juror No. 2]. |
| Prospective Juror 2: | I donated to the NAACP before this, maybe like ten years ago. |
| Court: | Anybody else? Yes. |
| Juror No. 8: | [Juror No. 8] I'm a board member of API Legal Outreach which benefits low income families in the Bay Area with various legal assistance. I'm just on the board though I don't actually volunteer in helping on any of the cases. |
| Court: | Okay. And you used to be a DA? |
| Juror No. 8: | Yes. |
| Court: | And you still are? |

United States District Court
Northern District of California

18

| | | |
|---|---|---|
| Juror No. 8: | No. I'm inactive. I was a DA for about four years in Arizona, Maricopa County. | |
| Court: | Okay. Is that where the Jodi Arias case is? | |
| Juror No. 8: | It is where the Jodi Arias case is taking place, yes. I didn't watch it mostly because I'm sure I would know the people that were prosecuting and defending it and I just didn't want to get wrapped up into it. | |
| Court: | All right. Do you think you could be fair and impartial to the defense in this case? | |
| Juror No. 8: | Yes. | |

Dkt. No. 28-5 at 34-35; Dkt. No. 31 at 7.

| | |
|---|---|
| Mr. Flores: | Thank you.  [Juror No. 8], I forgot to ask you yesterday. |
| Juror No. 8: | Yes. |
| Mr. Flores: | Why did you leave the prosecutor's office? |
| Juror No. 8: | My father became very ill so I went home to take care of him. |
| Mr. Flores: | There wasn't any issue with the job? |
| Juror No. 8: | No, no. |
| Mr. Flores: | Any issue with prosecutors? |
| Juror No. 8: | No. I'm still very good friends with everybody there. |
| Mr. Flores: | Very good. |

Dkt. No. 31 at 8-9.  The fact that Juror No. 8 did not make any statements suggesting that she

could not act with impartiality, and the fact that she stated that she could be fair and impartial in

this case, fairly support the trial court's determination that she suffered from neither actual nor

implied bias.[5]  Juror No. 8 did not express any bias against Petitioner specifically or criminal

defendants generally, did not express that she held views or beliefs that would prevent or

---

[5] In support of his argument that Juror No. 8 was biased, Petitioner alleges that the prosecutor excused a potential juror for cause based on his occupation as a defense attorney.  Dkt. No. 21-1 at 3.  As discussed *supra*, whether a potential juror is biased is fact and context specific.  Whether Juror No. 8 was biased must be determined by examining the facts specific to her.  That the prosecutor excused a defense attorney for cause does not establish that defense attorneys or prosecutors, as a matter of law, harbor actual or implicit bias to such an extent that they cannot be impartial jurors.

United States District Court
Northern District of California

1    substantially impair her ability to serve as a juror in accordance with the court's instructions and

2    her oath, and did not express that she had any personal experience similar or identical to the fact

3    pattern at issue.

4            The Court also finds that the California Supreme Court's denial of Petitioner's claim that

5    his allegation of juror bias required the trial court to inquire further into her potential bias was not

6    an unreasonable application of, or contrary to, Supreme Court precedent, nor was it based on an

7    unreasonable determination of the facts in light of the evidence presented in the state court

8    proceeding.  Clearly established federal law, as determined by the Supreme Court, plainly holds

9    that courts are not required to hold a hearing every time there is an allegation of juror bias.  *Tracey*

10   *v. Palmateer*, 341 F.3d 1037, 1045 (9th Cir. 2003); *see also Sims v. Rowland*, 414 F.3d 1148, 1153

11   (9th Cir. 2005) (Supreme Court cases do not require that trial court *sua sponte* conduct hearing

12   whenever presented with allegations of juror bias).  In determining whether a hearing must be

13   held, the court must consider the content of the allegations, the seriousness of the alleged

14   misconduct or bias, and the credibility of the source.  *Tracey*, 341 F.3d at 1044.  The state court's

15   denial of the claim that an evidentiary hearing was required was not an unreasonable

16   determination of the facts where there was evidence in the record supporting the trial court's

17   finding that Juror No. 8 harbored neither actual nor implicit bias.  Federal habeas relief is denied

18   as to this claim.

19           **3.      Juror Misconduct Claim**

20           Petitioner argues that he was deprived of a fair trial because a juror feedback survey

21   indicated that juror Sabas Cabarogeas had considered extrinsic evidence. Am. Pet. at 4–5.

22   Respondent argues that this claim fails on the merits because the Court must presume correct the

23   state trial court's determination that juror Cabarogeas was credible when he testified that his wife

24   filled out the survey and that he did not consider outside sources in reaching the verdict.  Dkt. No.

25   12-1 at 14–16.  In his traverse, Petitioner argues that juror Cabarogeas's changing and confusing

26   testimony at the hearing on the motion for a new trial casts doubt on his credibility.  Dkt. No. 21-1

27   at 6–11.

28   //

United States District Court
Northern District of California

###### a.     Standard

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence presented at trial.  *See Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965) (due process violated when courtroom bailiffs testified for prosecution; extreme prejudice results when witness against defendant has "continuous and intimate association" with jury members).  Evidence not presented at trial is deemed "extrinsic."  *See Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987).  Jury exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment.  *See Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995).  However, a petitioner is entitled to habeas relief where there was been jury exposure to extrinsic evidence only if it can be established that the exposure to extrinsic evidence had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).  In other words, the error must result in "actual prejudice."  *Brecht*, 507 U.S. at 637.

Several factors are relevant in determining whether the alleged introduction of extrinsic evidence constitutes reversible error:

> (1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of . . . whether the introduction of extrinsic material [substantially and injuriously] affected the verdict.

*Lawson*, 60 F.3d at 612 (omission and alteration in original).  A consideration that falls within the fifth factor is the characterization of the incident by the trial court.  "[S]pecial deference" must be given to the trial court's impression of the impact of the extrinsic evidence.  *United States v. Plunk*, 153 F.3d 1011, 1024 (9th Cir.), *opinion amended on denial of reh'g*, 161 F.3d 1195 (9th Cir. 1998), *overruled on other grounds by United States v. Hankey*, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000).  While instructive, none of these factors should be considered dispositive.  *See Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir. 1988).

//

1          **b.      Analysis**

2          In the amended petition, Petitioner argues that his Sixth Amendment right to trial by jury

3    was violated because juror Cabarogeas considered extrinsic evidence.  The Court has carefully

4    reviewed the record and concludes that the state court's denial of this claim was not contrary to,

5    and did not involve an unreasonable application of, clearly established federal law, and the denial

6    did not result in a decision that was based on an unreasonable determination of the facts in light of

7    the evidence presented in the state court proceeding.

8          This claim arises out of juror Cabaroegas' response to an optional jury feedback survey

9    sent after trial by defense counsel to all jurors.  The survey set forth seventeen statements, and

10   asked the juror to circle the answer which best related to his or her experience.  The possible

11   answers were: strongly agree, agree, not sure, disagree, and strongly disagree.  At the end of the

12   survey, the juror was asked to sign a declaration stating, under penalty of perjury, that the answers

13   and information provided were all true and correct.  Dkt. No. 5-1 at 6-10.  Petitioner alleges that

14   juror Cabaroegas's response to seven of these questions indicated that he improperly considered

15   extrinsic evidence.  Specifically, juror Cabaroegas answered "strongly agree" when asked if he

16   used cellphones/tablets/laptops during jury deliberations, when asked if he or the jurors used

17   mapping software to view the scene, when asked if visiting Victoria Manalo Draves Park was

18   helpful, when asked if he relied on the jury instructions during deliberations, when asked if the

19   juror shared personal experiences during deliberations, and when asked if outside research

20   (statistics, personal experience, internet, newspaper articles) was used in deliberations; and

21   responded "agree" when asked if he used the Internet to do further research.  Dkt. No. 5-1 at 6-10.

22          Petitioner moved for a new trial on the grounds that (1) the verdict was improperly based

23   on extrinsic evidence, and (2) juror Cabaroegas was guilty of misconduct for considering extrinsic

24   evidence, in violation of Cal. Penal Code § 1181 and in contravention of the jury instructions,

25   specifically Jury Instruction Nos. 101, 200, 201 and 3550.  CT 417-42.  On January 31, 2014, a

26   hearing was held on the new trial motion.  CT 570-99.  At the hearing, juror Cabaroegas testified

27   that his wife filled out the survey; that he signed the survey without reading it; and that he neither

28   relied on extrinsic evidence (cellphones/tablets/laptops, mapping software, outside research, the

United States District Court
Northern District of California

22

1    internet) during jury deliberations, nor visited Victoria Manalo Draves Park, nor shared or relied

2    on personal experiences during jury deliberations.  *Id.*  The trial court concluded that there had

3    been no juror misconduct and denied the motion for a new trial.  RT 599.  The California Supreme

4    Court summarily denied this claim.  Answer, Ex. M.

5           Implicit in the trial court's determination that there was no juror misconduct is a finding

6    that juror Cabaroegas was credible when he denied filling out the form and when he denied

7    considering extrinsic evidence during jury deliberations.  The trial court's determination regarding

8    juror Cabaroegas's credibility is presumed correct under 28 U.S.C. § 2254(e)(1).  *See Tinsley*, 895

9    F.2d at 525 (implicit factual findings are entitled to presumption of correctness in appropriate

10   circumstances); *see also Taylor v. Horn*, 504 F.3d 416, 433 (3d Cir. 2007) ("Implicit factual

11   findings are presumed correct under § 2254(e)(1) to the same extent as express factual findings.").

12   Petitioner argues that juror Cabaroegas was not a credible witness because his responses at the

13   hearing on the new trial motion were evasive and contradictory.  However, as the trial court found,

14   juror Cabaroegas was credible with respect to the primary issue of whether he had considered

15   extrinsic evidence during deliberations.  The Court finds that Petitioner has not presented "clear

16   and convincing evidence" rebutting the presumption of correctness due the trial court's

17   determination of juror Cabaroegas's credibility with respect to the relevant issue.  The Court

18   therefore finds that the California Supreme Court's denial of this claim was not contrary to, and

19   did not involve an unreasonable application of, clearly established federal law, and that the denial

20   did not result in a decision that was based on an unreasonable determination of the facts in light of

21   the evidence presented in the state court proceeding.  Habeas relief is denied on this claim.

22          **4.      Ineffective Assistance of Counsel**

23          Petitioner argues that trial counsel was ineffective for failing to follow his suggestion that

24   Juror No. 8 be dismissed for cause and because trial counsel failed to conduct a reasonable pre-

25   trial investigation when she failed to subpoena Maria K.'s one-year mental records and call her

26   treating physicians as witnesses.  Am. Pet. at 4–6.  Petitioner argues that the failure to dismiss

27   Juror No. 8 for cause resulted in a biased jury, and that the failure to subpoena the requested

28   records and call the requested witnesses rendered defense counsel unable to effectively cast doubt

United States District Court
Northern District of California

23

on Maria K.'s testimony and unable to corroborate the defense expert witness' testimony challenging Maria K.'s credibility.  *Id.*; Dkt. No. 21-1 at 18-22, 23-26.   Respondent argues that Petitioner has not exhausted his claim that counsel was ineffective for failing to follow his suggestion that Juror No. 8 be dismissed for cause and that, in the alternative, if this claim was exhausted, the claim was reasonably denied by the California Supreme Court because Petitioner demonstrated neither deficient performance nor prejudice.  Dkt. No. 12-1 at 14.  Respondent further argues that Petitioner's claim that trial counsel failed to conduct a reasonable pre-trial investigation fails for lack of specificity and on the merits because the failure to call Maria K.'s doctors could have been a tactical decision and because Petitioner was not prejudiced by this failure.  Dkt. No. 12-1 at 16-19.

### a.    Legal Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance of counsel, but effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  *Id.*  In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things.

First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687–88.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id.* at 687.  The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable.  *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 689.

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e.,

24

1

2

3

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

4

5

6

7

8

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

9

10

11

12

13

14

15

16

17

18

19

20

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *See Cullen*, 563 U.S. at 189. A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See id.* at 190; *Harrington*, 562 U.S. at 88–89 (same); *Premo v. Moore*, 562 U.S. 115, 122 (2011) (same). The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

21

### b.       Failure to Excuse Juror No. 8 for Cause

22

23

24

As an initial matter, this claim is exhausted. In his state court habeas petition, Petitioner titled his first claim as follows: "The court improperly refused to excuse a juror for cause." In the supporting facts, Petitioner stated as follows:

25

26

27

28

> During jury selection petitioner asked defense counsel to remove one of the jurors since she told the court that she worked as a prosecutor in the state of Arizona. Petitioner felt that this juror who later was chosen as jury's foreperson could not be fair and impartial. Defense counsel told me that it would be alright, that she knew what she was doing. I saw an attorney be removed by the prosecution. I again asked defense counsel to removed (sic) the ex-prosecutor from the panel. I once again received the same answer. I also raised this issue with appellate counsel. By this being allowed the court violated my right to a fair trial.

United States District Court
Northern District of California

Dkt. No. 14-12 at 4.  Petitioner listed the following cases as supporting authority:  *Hinton v. Alabama*, 134 S.Ct. 1081 (2014); *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Cronic*, 466 U.S. 648 (1984); *Smith v. Robbins*, 528 U.S. 259 (2000); *United States v. Martinez Salazar*, 528 U.S. 304 (2000).  Dkt. No. 14-12 at 4.  Although Petitioner did not state that he was raising an ineffective assistance of counsel claim, in describing the supporting facts, he focuses on defense counsel's and appellate counsel's refusal to raise these issues.  In addition, *Strickland* is commonly cited as setting forth the legal standard for evaluating ineffective of assistance claims, *see Strickland*, 466 U.S. at 687; and both *Hinton* and *Cronic* address ineffective assistance of trial counsel claims, *see Hinton*, 134 S.Ct. at 1088-90, *Cronic*, 466 U.S. at 663-66.[6]  The Court finds that, liberally construed, Petitioner fairly presented in his state court habeas petition his claim that counsel was ineffective for failing to excuse or challenge Juror No. 8 for cause, and therefore exhausted this claim.[7]  *Peterson v. Lampert*, 319 F.3d 1153, 1159 (9th Cir. 2003) ("for purposes of exhaustion, counseled petitions in state court may, and sometimes should, be read differently from pro se petitions . . . '[T]he complete exhaustion rule is not to trap the unwary *pro se* prisoner.'") (citing *Slack v. McDaniel*, 529 U.S. 473, 487 (2000) (internal quotation marks omitted)).

The Court now turns to the merits of this claim.  Petitioner argues that counsel was ineffective because she failed to move to excuse Juror No. 8 for cause after learning Juror No. 8 had formerly worked as a prosecutor.  The state court's denial of this claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Nothing in the record overcomes the strong presumption that trial counsel's decision not to seek to strike Juror No. 8 for cause fell within the wide range of reasonable professional assistance.  Juror No. 8 stated that she could be fair and

---

[6] *Smith* addresses whether California's *Wende* procedure adequately safeguarded a defendant's right to appellate counsel.  *Smith*, 528 U.S. at 264.  *Martinez-Salazar* addresses whether a federal defendant's peremptory challenge right is impaired when he peremptorily challenges a potential juror whom the district court erroneously refused to excuse for cause, and the defendant thereafter exhausts his peremptory challenges.  *See Martinez-Salazar*, 528 U.S. at 311-17.

[7] Even if this claim is unexhausted, the Court may deny it on the merits.  *See* 28 U.S.C. § 2254(b)(2).

1   impartial, and did not make any statements indicating bias against petitioner or criminal

2   defendants.  Allowing a former prosecutor to serve on a jury is not *per se* unreasonable.  Keeping

3   in mind the deferential standard set forth in *Strickland*, and the "high level of deference given to

4   counsel's decisions during jury selection," *Carrera v. Ayers*, 670 F.3d 938, 948 (9th Cir. 2011), *on*

5   *reh'g en banc*, 699 F.3d 1104 (9th Cir. 2012), the Court finds that counsel's performance was not

6   deficient.  Even assuming deficient conduct, Petitioner cannot establish the "prejudice" prong of

7   the test set forth in Strickland.  *Strickland*, 466 U.S. at 697.   There is no evidence of actual juror

8   bias.  *See Fields v. Brown*, 503 F.3d 755, 776 (9th Cir. 2007) (finding no prejudice where there

9   was no bias because "[r]eplacement of one unbiased juror with another unbiased juror should not

10  alter the outcome").  Habeas relief is denied on this claim.

### c.      Failure to Conduct Reasonable Pretrial Investigation

12          Petitioner argues that counsel was ineffective because counsel failed to call Maria K.'s

13  treating physicians as witnesses, and was therefore unable to effectively attack Maria K.'s

14  credibility.  Am. Pet. at 6 and Ex. C.  Specifically, Petitioner argues that because Maria K.'s

15  testimony was the only evidence tying him to the charged crime and the trial court's limitation on

16  the scope of cross-examination prevented him from effectively challenging Maria K.'s credibility,

17  the failure to subpoena and call as witnesses Maria K.'s other physicians left the defense unable to

18  corroborate the defense expert witness's assessment of Maria K.'s credibility.  Dkt. No. 21-1 at

19  18-22.  Respondent argues that Petitioner's argument is wholly conclusory and unsupported by

20  specific facts, and that this argument fails on the merits because Petitioner has not shown that

21  Maria K.'s physician's testimony or medical records from that physician would have been

22  favorable to petitioner, or shown that Petitioner was prejudiced by this purported failure.  Dkt. No.

23  12-1 at 16-19.

24          The Court finds that Petitioner has failed to establish ineffective assistance of counsel

25  because he has not shown that Maria K.'s treating physicians would have provided favorable

26  testimony.  Maria K.'s treating physicians from Westside Crisis Clinic SOMA were listed as

27  potential prosecution witnesses, indicating that their testimony was unlikely to challenge Maria

28  K.'s credibility regarding her reporting of the relevant events in May 2012.  CT 203-04.  Petitioner

United States District Court
Northern District of California

27

also has not shown that admitting Maria K.'s medical records would have significantly undermined her credibility.  Maria K.'s medical records established that she was never diagnosed with bipolar disorder.  RT 332.  The defense's expert witness focused on the fact that Maria K. took medication that can be used to treat bipolar disorder to imply that Maria K. might be suffering from symptoms associated with that condition, such as being hypersexualized, seeing or hearing things that did not happen, and engaging in inappropriate behavior.  RT 297, 304-06.  The admission of Maria K.'s medical records might have undermined this line of attack on Maria K.'s credibility.  Petitioner has not overcome the presumption that trial counsel made a strategic decision not to call Maria K.'s treating physicians as witnesses, and Petitioner has not demonstrated prejudice, i.e. that there is a reasonable probability that, if Maria K.'s treating physicians had testified or Maria K.'s medical records had been admitted into evidence, the result of the proceeding would have been different.  Habeas relief is denied on this claim.

### IV.  Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### V. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

1    The Clerk shall enter judgment in favor of Respondent and close the file.

2    **IT IS SO ORDERED.**

3    Dated:  10/29/2020

4    HAYWOOD S. GILLIAM, JR.

5    United States District Judge